UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARILYN M. THORNTON,                          )
                                              )
              Plaintiff,                      )
                                              )
v.                                            )          No. 3:16-CV-242-CCS
                                              )
NANCY A. BERRYHILL,[1]                        )
Acting Commissioner of Social Security,       )
                                              )
              Defendant.                      )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the consent of the parties [Doc. 23].  Now before the Court

is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18]

and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 21 &

22].    Marilyn M. Thornton ("the Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill,

Acting Commissioner of Social Security ("the Commissioner").  For the reasons that follow, the

Court will **DENY** the Plaintiff's motion, and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

This is the Plaintiff's second appeal before the District Court seeking judicial review of the

Commissioner's decision.  On August 6, 2014, Chief Judge Varlan remanded the Plaintiff's prior

civil action for additional proceedings.  [Tr. 718, 798-816].  During the pendency of that civil

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner
Carolyn W. Colvin.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is
substituted as the Defendant in this case.

action, the Plaintiff filed a subsequent application, her third application in total, for Title II disability insurance benefits. [Tr. 718]. When Chief Judge Varlan remanded the prior civil action, the Appeals Council consolidated the Plaintiff's subsequent, third application with the remand case and assigned a new ALJ to the instant matter. [*Id.*].

The ALJ held a new hearing on December 8, 2015. [Tr. 738-75]. On March 16, 2016, the ALJ issued an unfavorable decision. [Tr. 718-30]. The ALJ found that the Plaintiff was "not disabled" between her alleged onset date of July 1, 2009, and her date last insured of December 31, 2012. [*Id.*]. The Plaintiff did not seek review from the Appeals Council, making the ALJ's decision the final decision of the Commissioner. Having exhausted her administrative remedies once again, the Plaintiff filed the instant Complaint now before the Court on May 16, 2016, seeking judicial review of the Commissioner's decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.   ALJ FINDGINS

The ALJ made the following findings:

> 1.   The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.
>
> 2.   The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 2009, through her date last insured of December 31, 2012. (20 CFR 404.1571 *et seq.*).
>
> 3.   Through the date last insured, the claimant had the following severe impairments: bipolar disorder, posttraumatic stress disorder, panic disorder, and borderline personality disorder (20 CFR 404.1520(c)).
>
> 4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part

404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  she is able to understand, remember, and carry out simple and one-three-step detailed instructions but is limited to work which requires no public interaction, occasional interaction with supervisors and co-workers, and no more than occasional changes in the workplace.  She can work better with things than with people.

6.   Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on May 9, 1965 and at onset was 46 years old at, which is defined as a younger individual age 18-49.  She was 47 years old on the date she was last insured (20 CFR 404.1563).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from July 1, 2009, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(g)).

[Tr. 720-29].

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    ANALYSIS

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

§ 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps.  *Id.*  The burden shifts to the Commissioner at step five who must prove that there is work available in the national economy that the claimant could perform.  *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, the Plaintiff alleges that the ALJ did not properly weigh the opinions of her treating sources, including treating psychologist, Nancy Brown, Ph.D., treating psychiatrist, Randall May, M.D., and primary care physician Robert Wilson, M.D., or the opinions of the state agency medical sources.  [Doc. 18 at 14-20].  In addition, the Plaintiff submits that the exhibit list to the ALJ's decision and the Court transcript were not properly compiled in accordance with the Hearings, Appeals, and Litigation Law Manual ("HALLEX") 1-2-1-20.  [*Id.* at 20-22].  Finally,

the Plaintiff maintains that the ALJ's reliance on vocational expert ("VE") testimony was error because the ALJ did not perform his affirmative duty and inquire whether the VE's testimony was consistent with the *Dictionary of Occupational Titles* ("DOT") before relying on the testimony at step five of the sequential evaluation. [*Id.* at 22-24]. The Court will address each alleged error in turn.

### A.      Treating Source Opinions

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. § 404.1527(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the

ALJ.  *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. App'x 988, 992 (6th Cir. 2007).

### 1.    Treating psychologist Nancy Brown, Ph.D.

Dr. Brown submitted a summary letter and completed a "Medical Record Summation Inquiry" form provided by the Plaintiff's attorney, both dated April 26, 2011.  [Tr. 554-61].  In the letter, Dr. Brown explained that she has provided periodic psychotherapy to the Plaintiff beginning in the fall of 2004 and on a weekly basis between August 2010 and April 2011.  [Tr. 554].  The Plaintiff's diagnoses include Bipolar I Disorder, Most Recent Episode Depressed, Severe with Psychotic Features, Posttraumatic Stress Disorder, Panic Disorder with Agoraphobia, and Borderline Personality Disorder.  [*Id.*].

Dr. Brown explained that in December 2007, the Plaintiff was briefly hospitalized after becoming very suicidal.  [Tr. 555].  When the Plaintiff was seen by Dr. Brown in October 2009, the Plaintiff indicated that she was too depressed to work.  [*Id.*].  The Plaintiff returned to therapy in August 2010, after a second hospitalization, [Tr. 555], this one lasting five days due to a medication change [Tr. 652].  Dr. Brown described the Plaintiff as feeling depressed most days, she is very dependent on her husband, she finds it very upsetting to have to leave her home to run errands or go to appointments, she describes most days as "bad," she experiences numerous crying bouts, and she rarely has any appetite during the day.  [Tr. 555-56].  Dr. Brown opined that the Plaintiff is unable to work and that it was unlikely she will ever be able to hold down a job.  [Tr. 557].

In the Medical Record Summation Inquiry, Dr. Brown opined the following functional limitations:  the Plaintiff's ability to understand, remember, and carry out simple instructions, as well as maintain personal appearance and be aware of hazards, was "good;"  her ability to perform

activities of daily living, interact appropriately and engage in other aspects of social functioning, and follow work rules was "fair;" her ability to carry out complex or detailed instructions, relate predictably in social situations, behave in an emotionally stable manner, concentrate, deal with the public, relate to peers, relate to supervisors and co-workers, use judgment, and demonstrate reliability was "poor."  [Tr. 559-60].

The Plaintiff concedes that the record does not contain any treatment notes from Dr. Brown but argues that Dr. Brown's summary letter and corresponding assessment are entitled to greater deference than the "little weight" assigned by the ALJ.  [Doc. 18 at 18].  The Plaintiff cites to her seven year treating relationship with Dr. Brown, including weekly therapy appointments in the months leading to the ALJ's decision, and the consistency of Dr. Brown's opinion with other medical opinions in the record.  [*Id.*].  The Court finds no error in the ALJ's assignment of little weight.

The ALJ provided a thorough, detailed review of Dr. Brown's summary letter and assessment despite the lack of contemporaneous clinical treatment notes.  [Tr. 724-26].  Ultimately the ALJ determined that Dr. Brown's opinion was only entitled to little weight, and the ALJ provided the requisite "good reason" for the weight assigned.  The lack of supporting clinical notes was an appropriate factor considered by the ALJ.  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) ("The existence of a medically determinable [mental] impairment of the required duration must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings.") (citation omitted); *Watson v. Astrue*, No. 5:11-CV-00717, 2012 WL 699788, at *9 (N.D. Ohio Mar. 1, 2012) (upholding the ALJ's decision to accord little weight, in part, to a treating source opinion where the source's treatment notes were absent from the record).  However, the ALJ cited to other substantial evidence supporting the assignment

of little weight.

The ALJ observed that Dr. Brown's opinion contained internal inconsistencies. For example, Dr. Brown opined the Plaintiff had a fair capacity to interact appropriately, communicate effectively, and engage in other aspects of social functioning while at the same time noting that the Plaintiff had a poor ability to relate to peers, supervisors, co-workers, and the public. [Tr. 725]; *see Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (finding the "lack of internal consistency" in a treating source's opinion constituted "good reason").

Moreover, the ALJ found Dr. Brown's opinion inconsistent with treatment notes from treating psychiatrist Dr. May, who provided contemporaneous treatment to the Plaintiff. [Tr. 725.]. Dr. May noted that the Plaintiff's affect was "markedly better" in September 2009 following a nine-month stay in Indiana. [Tr. 725, 960]. In June 2010, the Plaintiff's affect was "anxious," but she responded well to Prozac. [Tr. 725, 958]. Following her second hospitalization, the Plaintiff's affect was "stable" and she looked "significantly better." [Tr. 725, 956]. In September 2010, the Plaintiff's affect was bright," she was "doing much better," and she was "stable on her mediations." [Tr. 725, 955]. Moreover between December 2010 and July 2013, the Plaintiff's anxiety and depression was often rated a "1" or a "2" on a 5-point scale. [Tr. 725, 943-53]. The ALJ found Dr. May's detailed progress notes demonstrated that the Plaintiff was anxious and depressed at time but was otherwise fully oriented and functioned normally. [Tr. 726]. "ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record . . . ." *Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011).

The ALJ also found Dr. Brown's diagnoses of psychosis or agoraphobia inconsistent with treatment notes from Dr. May who never diagnosed the Plaintiff with either condition. [Tr. 726]. Furthermore, the ALJ found the Plaintiff's activities, including shopping, driving, going to Indiana

for a months-long visit, visiting family, and attending a high school reunion, along with the absence of Dr. Brown's treatment notes to substantiate a diagnosis of psychosis and agoraphobia, undermined the existence of either condition. [Tr. 726].

Finally, the ALJ properly found that no weight was entitled to Dr. Brown's opinion that the Plaintiff is unable to work and would never be able to hold down a job, because such findings are legal conclusions reserved to the Commissioner. *See* 20 C.F.R. 404.1527(d) (opinions on whether a claimant is "disabled" or "unable to work" are not "medical opinions" and are therefore "not [] given any special significance" because whether an individual meets the statutory definition of disability is an issue reserved for the Commissioner's determination).

In sum, the Court finds that substantial evidence supports the ALJ's conclusion that "the diagnoses and assessments of Dr. Brown are inconsistent with (and not supported by) the clinical progress notes of Dr. May[,] . . . is [inconsistent] with other evidence in the record and not well-supported by contemporaneous notes." [Tr. 726].

## 2.     Treating Psychiatrist Randall May, M.D.

The record contains four medial opinions from Dr. May that are dated prior and after the relevant time period in question of July 1, 2009, through December 31, 2012.

The first opinion was rendered on February 4, 2008, in which Dr. May rated the Plaintiff's ability to function as either "poor" or "none" and concluded that she is "not able to function in a job setting." [Tr. 288-91]. The second opinion was rendered on June 19, 2013. [Tr. 978-79]. Dr. May opined the Plaintiff was moderately impaired in memory and concentration and severely impaired in social ability, and he concluded that the Plaintiff is unable to hold a job due to confusion. [Tr. 978-79]. He further opined the following limitations: the Plaintiff cannot carry out simple, 1-2 step instructions and maintain a work routine without frequent breaks; she cannot

maintain an ordinary work routine without inordinate supervision; she cannot maintain socially appropriate behavior, hygiene and grooming; she cannot respond appropriately to normal stress and routine changes; and she cannot maintain a work schedule without missing frequently due to psychological issues. [Tr. 979]. In two subsequent opinions, dated July 12, 2013, and November 24, 2015, Dr. May opined that Plaintiff was markedly or extremely limited in all areas of mental functioning. [Tr. 982-84, 1050-52]. He explained in both opinions that the Plaintiff's long history of mental illnesses prevented her from keeping a job. [Tr. 984, 1052].

The Plaintiff first asserts that the ALJ failed to discuss Dr. May's June 19 and July 12, 2013 opinions. [Doc. 18 at 16]. The ALJ's decision, however, contradicts the Plaintiff's assertion. The ALJ specifically referenced both opinions, along with the February 4, 2008 and November 24, 2015 opinions, in his decision [Tr. 726 n.4], and he discussed the specific findings made therein, including that Dr. May found the Plaintiff had marked impairments in functioning and that she was unable to keep a job due to confusion and had a long history of mental illnesses. [Tr. 727]. The ALJ observed that none of Dr. May's opinions were dated during the relevant time period under review. [Tr. 726 n.4]. Nonetheless, the ALJ addressed Dr. May's findings, providing "good reason" for assigning all of his opinions "little weight." [Tr. 726-27].

The Plaintiff argues that Dr. May's opinions deserve greater weight because his treatment notes document a long history of mood instability, depression, anxiety, and difficulty dealing with stressors. [Doc. 18 at 16-17]. The ALJ, also relying on Dr. May's own treatment records, observed that during the relevant time period, the Plaintiff's mental status was generally within normal limits, and Dr. May consistently rated the Plaintiff's anxiety and depression no more than a "1" or a "2" on 5-point scale. [Tr. 727, 939-60]. "Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could

reasonably support the conclusion reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir.1999).

The Court finds the ALJ's interpretation of Dr. May's treatment records reasonable. As discussed above, Dr. May observed the Plaintiff was "markedly better" following her nine-month stay in Indiana in September 2009; the Plaintiff had an anxious affect in June 2010, but she responded well to Prozac; her affect in September 2010 was noted as "bright," she was "doing much better," and stable on her medications; and between March 2010 and July 2012, while the Plaintiff's mood fluctuated, the Plaintiff's anxiety and depression rating was consistently rated a "1" or a "2." [Tr. 725, 943-53, 956-58, 962-63]. The Plaintiff argues that Dr. May's treatment notes do not indicate that a rating of "1" is representative of the lowest level of anxiety and depression and "5" the highest. [Doc. 18 at 17]. The Court finds the ALJ's interpretation of Dr. May's ratings reasonable and supported by his treatment notes. For example, on June 13, 2012, the Plaintiff's anxiety and depression was rated a "2," but the following month her depression was rated a "1" with Dr. May noting that the Plaintiff's "mood has improved" and "overall is doing better." [Tr. 943-44].

Finally, the Court finds that the ALJ appropriately gave little weight to Dr. May's finding that the Plaintiff is unable to work as such a finding constitutes a legal conclusion reserved for the Commissioner's determination. *See* 20 C.F.R. 404.1527(d)

Accordingly, substantial evidence supports the ALJ's assignment of little weight to Dr. May's opinions, and the Plaintiff's allegations to the contrary are not well-taken.

### 3.    Primary Care Physician Robert Wilson, M.D.

Dr. Wilson completed a disability form for the Social Security Administration on August 5, 2013. [Tr. 987-88]. Dr. Wilson diagnosed the Plaintiff with Bipolar D/O, Anxiety D/O, and

Chronic Pancreatitis. [Tr. 987]. He opined that the Plaintiff has improved with treatment, noting she has done "somewhat better in regards to mood with current [medication.]" [*Id.*]. Dr. Wilson opined that the Plaintiff's memory and concentration was moderately impaired, and her social ability was severely impaired. [Tr. 987]. In the narrative portion of the form, Dr. Wilson opined the following: the Plaintiff cannot carry out simple, 1-2 step instructions and maintain a work routine without frequent breaks because she has trouble with short term memory; she cannot maintain an ordinary work routine without inordinate supervision because she has trouble concentrating; she cannot maintain socially appropriate behavior, hygiene and grooming because periods of severe depression and manic episodes may cause her to neglect personal hygiene and express an inappropriate behavior; she cannot respond appropriately to normal stress and routine changes because she does not respond well to stressful situations; and she cannot care for herself and maintain independence in daily living activities on a sustained basis because she needs assistance with activities of daily living. [Tr. 988].

The Plaintiff does not cite to any specific error committed by the ALJ in assigning little weight to Dr. Wilson's opinion and only generally argues that the ALJ did not provide "good reason." [Doc. 18 at 16]. The Court disagrees and finds "good reason" was provided.

First, the ALJ observed that Dr. Wilson's opinion was rendered after the Plaintiff's date last insured. [Tr. 728]. "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004). Nonetheless, the ALJ considered the opinion but found it did not warrant controlling weight. Second, the ALJ noted Dr. Wilson's finding that the Plaintiff was moderately impaired "in memory and concertation at least limits, if not contradicts, his narrative statements, such as that she cannot maintain an ordinary work routine without inordinate supervision due to trouble

with concentration ability, and that she cannot carry [out] simple, 1-2 steps instructions." [Tr. 728]. Indeed, "courts generally agree that although the Social Security regulations do not define a 'moderate limitation,' it is commonly defined on agency forms 'as meaning that the individual is still able to function satisfactorily.'" *Ziggas v. Colvin*, No. 1:13-cv-87, 2014 WL 1814019, at *6 (S.D. Ohio May 6, 2014) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006)).

The ALJ also concluded that Dr. Wilson's findings, including that the Plaintiff required assistance with activities of daily living, were not consistent with the Plaintiff's testimony and presentation at the hearing. [Tr. 728]. An ALJ "may [] consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *5 (July 2, 1996). The ALJ further discounted the opinion on the basis of Dr. May's treatment notes. [Tr. 728]. As discussed above, Dr. May's treatment records provide substantial evidence the despite intermittent complaints of depression and anxiety during the relevant time period, the Plaintiff also exhibited normal clinical findings and Dr. May often rated the Plaintiff's depression and anxiety as a "1" or "2" on a 5-point scale. *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 568 (6th Cir. 2016) (concluding that an ALJ is permitted to consider "any factor . . . which tend to support or contradiction" a treating source's opinion, including other medical opinions in the record) (quoting 20 C.F.R. § 404.1527(c)(6)).

Therefore, the Court finds no error in the ALJ's consideration of Dr. Wilson's opinion.

### B.    State Agency Medical Sources

Non-examining state agency psychologist, Robert de la Torre, Psy.D, completed a "Mental Residual Functional Capacity Assessment" on February 8, 2011. [Tr. 357-59]. Therein, he opined that the Plaintiff could understand, remember, and carry out simple and one to three step detailed

instructions, she could concentrate and persist for a two-hour time period in an eight-hour day with customary breaks, she could interact appropriately with the general public, supervisors, and peers but would work better with things rather than people, and she can set goals independently and adapt to infrequent change. [Tr. 359]. The ALJ gave "some weight" to the opinion, finding the Plaintiff was more restrictive than opined by Dr. de la Torre in that the evidence established that the Plaintiff should have no public interaction and only occasionally interaction with co-workers and supervisors. [Tr. 727].

The record also includes an opinion from one-time consultative examiner Philip Axtell, Ph.D., who completed a psychological evaluation and "Medical Source Statement of Ability to do Work-Related Activities (Mental)" on January 17, 2011. [Tr. 344-50]. Dr. Axtell opined that the Plaintiff showed no impairment in her short-term or long-term memory or an ability to sustain concentration, mild impairment in ability to adapt to change, and moderate impairment in social relating. [Tr. 347]. Specifically, Dr. Axtell found the Plaintiff moderately limited in her ability to interact appropriately with the public, supervisors, and co-workers, and mildly-to-moderately limited in her ability to respond appropriately to usual work situations and to changes in a routine work setting. [Tr. 349]. The ALJ likewise assigned "some weight" to Dr. Axtell's opinion, finding the overall evidence indicated that the Plaintiff had greater limitations in ability to sustain concentration than found by Dr. Axtell. [Tr. 727].

The Plaintiff argues that the ALJ does not given any reason for the assignment of some weight to the foregoing opinions but only explains how he departed from the opinions slightly. [Doc. 18 at 19-20]. Although the ALJ did not cite specific reasons for his assignment of weight, the Court finds the error was harmless. Given the ALJ's detailed and thorough discussion of the evidence, the Court finds the ALJ's assignment of "some weight" and the adoption of certain

15

limitations opined by Dr. de la Torre and Dr. Axtell is supported by the evidence discussed by the ALJ throughout his decision.  For example, Dr. de la Torre's finding that the Plaintiff was only moderately limited in concentration, persistence and pace is supported by Dr. May's treatment notes which document that the Plaintiff was depressed and anxious at times but also experienced periods where her attention and concentration were noted as "good" or within normal limits.  [Tr. Tr. 725].  This same reasoning also supports the ALJ's departure from Dr. Axtell's finding that the Plaintiff demonstrated no limitation in her ability to sustain concentration.  Moreover, because the ALJ found the Plaintiff more limited than opined by either Dr. de la Torre or Dr. Axtell, and the ALJ provided "good reason" for the weight assigned to the Plaintiff's treating sources, the Court finds that the Plaintiff has not been prejudiced by the ALJ's assignment of some weight to the opinions of the non-treating and non-examining sources.  *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 633 (6th Cir. 2016) ("While the ALJ should have clearly stated his reasons for adopting Dr. Balunas's and Dr. Kuiper's opinion, this error is not fatal because their opinions are consistent with other record evidence, the inconsistent treating source opinions were properly discredited, and Kepke has not shown that she has been prejudiced on the merits.").

The Plaintiff further contends that the assignment of some weight was error because Dr. de la Torre and Dr. Axtell rendered their opinions prior to later medical records, including the opinions of Dr. Brown and Dr. May.  [Doc. 18 at 19-20].  Social Security Ruling 96-6p, 1996 WL 374180, at *2 (July 2, 1996), which explains that opinions from state agency medical and psychological consultant must be considered, "does not require an administrative law judge to reject a state agency medical opinion merely because the claimant continues treatment after the reviewer's opinion was formed or merely because additional medical records are generated after the reviewer's opinion is rendered."  *Swope v. Comm'r of Soc. Sec.*, No. 2:14-CV-516, 2015 WL

1526723, at *9 (S.D. Ohio Apr. 2, 2015), *adopted sub nom.*, No. 2:14-CV-516, 2015 WL 5626508 (S.D. Ohio Sept. 24, 2015).  Moreover, "[w]hen an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence," our appellate court "require[s] some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted).  In the instant case, it is clear that the ALJ considered the later submitted medical records, in particular the opinions of Dr. Brown and Dr. May.  Furthermore, the ALJ only assigned some weight to Dr. de la Torre's and Dr. Axtell's opinions and did not solely rely on either opinion in rejecting the opinions from the Plaintiff's treating sources.  *See Klusmeier v. Berryhill*, No. 3:16-CV-339, 2017 WL 1066641, at *8 (E.D. Tenn. Mar. 21, 2017) ("[A] competing medical opinion from a non-treating source identified with other substantial evidence in the record may constitute 'good reason' for declining to give a treating source's opinion greater deference.) (citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004)).

Accordingly, the Court finds the ALJ did not err in his consideration of Dr. de la Torre's and Dr. Axtell's opinions.

### C.  Completeness of the Record and Exhibit List

The Plaintiff also submits that the ALJ did not comply with HALLEX I-2-1-20.  [Doc. 18 at 22-23].  The Plaintiff asserts that the exhibit list attached to the ALJ's decision [Tr. 731-34] is inconsistent and different from the exhibit list included in the transcript before the Court [Index 1 – Index 5], the ALJ cited to medical records not contained in any exhibit list, and treatment records submitted after the hearing, including treatment notes from Dr. Wilson attached to the Plaintiff's brief, were not included in the Court transcript or the exhibit list to the ALJ's decision.  [Doc. 18

at 22-23]. As a result, the Plaintiff claims that she has been prejudiced. [Doc. 18 at 22].

In relevant part, HALLEX I-2-1-20 states as follows:

> An exhibit list in final form is required when an ALJ issues a less than fully favorable decision to protect the claimant's due process rights. The claimant is entitled to know the information the ALJ relied on when making the decision. When an ALJ issues a less than fully favorable decision, preparing the exhibit list in final form is mandatory and is not a discretionary practice.

https://www.ssa.gov/OP_Home/hallex/I-02/I-2-1-20.html (Aug. 5, 2015). Our appellate court has recognized that HALLEX is not binding on courts but does offer procedural guidance. *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008).

The Court finds that the Plaintiff has not established reversible error. The ALJ's decision explains that two exhibit lists were kept in accordance with procedural mandates which required separate records for the remand case and the Plaintiff's subsequent application. [Tr. 718 n.2]. Thus, the Court transcript consists of two exhibits lists that have been combined into one: the exhibit list from the ALJ's 2012 decision [Tr. 23-26], which is the remand case, and the exhibit list related to the Plaintiff's subsequent application [Tr. 731-34], which was filed during the pendency of the remand case. Plaintiff's counsel was notified by letter in May 2015 that two cases existed: the remand case and the Plaintiff's subsequent application. [Tr. 859]. The letter also directed counsel to a proposed exhibit list so that counsel could review the exhibits and ensure that all the medical records were included and all relevant evidence was up-to-date. [*Id.*].

While the exhibit list that makes up the Court transcript is not identical in appearance or numbering as the exhibit list to the ALJ's 2016 decision, the Court finds that all of the same medical records, except treatment records from Dr. Wilson which are attached to the Plaintiff's brief [Doc. 18-1], were included in the exhibit list to the ALJ's 2016 decision and the Court

transcript. The medical evidence from the ALJ's 2012 decision included exhibits 1F through 24F which are likewise labeled 1F through 24F in the Court transcript. [*Compare* Index 2 – Index 3 *with* Tr. 25-26]. The medical evidence listed in the ALJ's 2016 decision included exhibits C1F through C13F which are labeled as 21F and 25F through 34F in the Court transcript [*Compare* Index 4 – Index 5 *with* Tr. 733-34]. Upon the Court's review, there does not appear to be any medical records missing except Dr. Wilson's treatment notes attached to the Plaintiff's brief.

Although Dr. Wilson's treatment notes were not included in the Court transcript, the Court finds the error harmless. The majority of the treatment records are not related to the Plaintiff's mental impairments except one office visit. [Doc. 18-1 at 4-7]. Moreover, the treatment records are dated between May and September 2013, post-dating the Plaintiff's last date insured of December 31, 2012. Evidence that post-dates the period under review is generally of little probative value unless the evidence relates back to the claimant's condition prior to the expiration of her insured status. *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004). Here, the Plaintiff has not demonstrated the relevance of Dr. Wilson's post-dated medical records and only summarily asserts she has been prejudiced by their exclusion. The Court finds the Plaintiff's arguments insufficient to demonstrate reversible error. *See Wilson*, 378 F.3d at 546-47 (an ALJ's error is harmless if his ultimate decision is supported by substantial evidence and the error did not deprive the claimant of an important benefit or safeguard).

### D.    Step Five – Reliance on VE Testimony

Finally, the Plaintiff argues that the ALJ's reliance on VE testimony is insufficient to meet the Commissioner's burden at step five. [Doc. 18 at 22-23].

Relying on VE testimony at step five, the ALJ concluded that the Plaintiff could perform other work that exists in significant numbers in the national economy given the Plaintiff's RFC.

[Tr. 728-29]. During the hearing, the VE testified that someone with the same RFC as the Plaintiff could perform the requirements of unskilled work as a non-restaurant food service worker, a dining room/cafeteria attendant, and a dishwasher/kitchen helper. [Tr. 735, 771-72]. At the outset of the VE's testimony, the ALJ instructed the VE that if his testimony conflicted with the information in the DOT, the VE must identify the conflict and the basis for his conflicting opinion. [Tr. 769]. The VE never identified the existence of any conflicts [Tr. 769-78], and the ALJ subsequently relied on the VE's testimony at step five [Tr. 729]. Plaintiff's counsel also had the opportunity to cross-examine the VE and elicit testimony about any apparent conflicts, but counsel declined to question the VE. [Tr. 772].

The Plaintiff now maintains that "the ALJ did not perform his affirmative duty to question the VE about whether his testimony was consistent with the DOT . . . ." [Doc. 18 at 23]. The Plaintiff cites to the DOT's description of the jobs identified by the VE and argues that the DOT's descriptions conflict with the VE's testimony that someone with the Plaintiff's RFC could perform the demands of a non-restaurant food service worker, a dining room/cafeteria attendant, and a dishwasher/kitchen helper. [Id. at 23-24]. The Court disagrees and finds substantial evidence supports the ALJ's reliance on the VE's testimony.

Social Security Ruling 00-4p explains that in making disability determinations, the agency relies "primar[ily] on the DOT . . . for information about the requirements of work in the national economy." 2000 WL 1898704 at *2 (2004). However, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Id.* at *3. Therefore, VE testimony "may be able to provide more specific information about jobs or occupations than the DOT." *Id.* The ruling imposes an affirmative duty on the ALJ to ask about any possible conflicts between the VE's testimony and

information provided in the DOT.  *Id.* at *4.  Only if a conflict is identified by the VE must the ALJ "obtain a reasonable explanation for the apparent conflict."  *Id.*

In the instant case, the ALJ satisfied his affirmative duty when he instructed the VE that he must resolve any conflicts that may exists between testimony given and information contained in the DOT.  The fact that the Plaintiff now maintains that conflicts exist is insufficient to establish error by the ALJ.   "Nothing in S.S.R. 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."  *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006).  Because the VE did not identify any conflicts, the ALJ could properly rely on the testimony.  Further, Plaintiff's counsel had the burden to challenge the correctness of the VE's testimony, and her failure to do so does not create error on the ALJ's part, nor is it grounds for remand.  *See Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168-69 (6th Cir. 2009) (affirming that Social Security Ruling 00-4p does not require an ALJ to investing whether the VE's testimony is accurate and instead, "[t]his obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT.  The fact that plaintiff's counsel did not do so is not grounds for relief").

Therefore, the Court finds this assignment of error is also without merit.

## V. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 17**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 21**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge